USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/10/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                :

 WILLIAM WEDGE,                      :

                      :

               Plaintiff,      :           12 Civ. 5645 (KPF)

                      :

        -v.-               :      OPINION AND ORDER

                      :

THE SHAWMUT DESIGN AND      :
CONSTRUCTION GROUP LONG TERM  :
DISABILITY INSURANCE PLAN and   :
RELIANCE STANDARD LIFE INSURANCE :
COMPANY,                  :

                      :

             Defendants.     :

                      :
------------------------------------------------------------------ X

KATHERINE POLK FAILLA, District Judge:

       On July 24, 2012, Plaintiff William Wedge commenced this litigation under the Employee Retirement Income Security Act of 1974 ("ERISA") against the Shawmut Design and Construction Group Long Term Disability Insurance Plan (the "Shawmut Plan") and Reliance Standard Life Insurance Company ("RSLI") (collectively, "Defendants") to contest a denial of benefits by RSLI. Pending before the Court is the preliminary question of what standard the Court should apply in evaluating RSLI's decision to deny Plaintiff benefits. For the reasons set forth in remainder of this Opinion, the Court will apply a deferential "arbitrary and capricious" standard.

## FACTUAL BACKGROUND[1]

### A.   Plaintiff's Employment with Shawmut

Plaintiff was an employee of Shawmut Design and Construction ("Shawmut"), a construction management firm.  (Compl. ¶¶ 3, 10, 17).  Shawmut established and maintained the Shawmut Plan, a benefit plan for its employees.  (Compl. ¶ 3).  The Shawmut Plan, in turn, purchased Group Long Term Disability Policy No. 114007 (the "Policy") from RSLI to provide long-term disability benefits to Shawmut Plan beneficiaries.  (Compl. ¶ 5).  Under this arrangement, Shawmut was the Shawmut Plan's Sponsor and Administrator, and RSLI was the Claim Administrator.  (Compl. ¶¶ 12-13).  As a Shawmut employee, Plaintiff was a beneficiary of, and received coverage under, the Shawmut Plan.  (Compl. ¶¶ 10-11).

### B.   Plaintiff's Disability

In February 2009, while Plaintiff was employed as a Senior Project Manager at Shawmut, he began to experience visual difficulties that included a "loss of depth perception and a right paracentral scotomoa, which was later diagnosed as resulting from Central Serous Chorioretinopathy ('CSCR')."  (Compl. ¶¶ 14-15).  The CSCR caused Plaintiff to lose central vision in his right eye, which loss makes it difficult for Plaintiff to focus on computer screens for longer than 20 minutes and written text for more than one hour, causes headaches, and has resulted in Plaintiff experiencing neck tension, musculoskeletal pain, and difficulty focusing on moving

---

[1]   The facts contained in this Opinion are drawn from Plaintiff's Complaint in this matter (Dkt. # 1), as well as from the undisputed factual assertions contained in the parties' letters to the Court concerning the standard of review, which letters are dated March 4, 2013 (Dkt. # 23), April 26, 2013 (Dkt. # 26), and May 2, 2013 (Dkt. # 27).

objects or images.  (Compl. ¶ 16).  Due to the consequent impairments from the CSCR, Plaintiff ceased working for Shawmut on March 26, 2009.  (Compl. ¶17).

**C.   Plaintiff's Coverage Under the Plan**

Under the Shawmut Plan, Plaintiff was entitled to disability benefit payments ("Regular Occupation Benefits") after a 90-day elimination period if, during that elimination period and for the first 24 months thereafter in which Plaintiff was disabled, he could not perform the material duties of his regular occupation.  (Compl. ¶ 18).  After the expiration of the Regular Occupation Benefits period, the Shawmut Plan entitled Plaintiff to disability benefit payments ("Any Occupation Benefits") if he could not perform the material duties of any occupation that Plaintiff's "education, training, or experience will reasonably allow."  (Compl. ¶ 18).

Plaintiff sought benefits under the Shawmut Plan to cover his CSCR-related disability, and on or about April 8, 2010, RSLI approved Plaintiff for Regular Occupation Benefits (retroactive to June 25, 2009) based on findings that (i) Plaintiff's occupation required visual acuity, depth, color perception, working near machinery, using computers 70% of the time, and traveling by plane or automobile 35% of the time, all of which were impacted by his CSCR; and (ii) Plaintiff's physician's opinion supported Plaintiff's claims of continued functional impairment.  (Compl. ¶ 22).  After the Regular Occupation Benefits period expired, on June 25, 2011, RSLI terminated Plaintiff's disability benefits, finding that Plaintiff did not satisfy the requirements for Any Occupation Benefits. (Compl. ¶ 24).  Specifically, RSLI found that Plaintiff appeared "capable of

sedentary work activity," and that "based on the available medical information as well as information about [Plaintiff's] training, education and experience," RSLI determined that Plaintiff could be employed as an Account Executive, Media Planner, or Estimator.  (*Id.*).

## D.     Plaintiff's Appeal from RSLI's Termination of Benefits

On or about December 20, 2011, nearly six months after RSLI found that Plaintiff did not qualify for Any Occupation Benefits, Plaintiff appealed RSLI's decision.  (Compl. ¶ 25).  Approximately three weeks later, on January 12, 2012, RSLI contacted Plaintiff to request that he submit to an independent medical examination ("IME"), scheduled for February 7, 2012, with Dr. Robert Josephberg. (Compl. ¶ 26).  Plaintiff agreed to submit to the IME on the condition that RSLI provide him with the opportunity to review and respond to Dr. Josephberg's report. (Compl. ¶ 28).  Despite RSLI having no obligation to do so, it agreed to Plaintiff's request.  (Dkt. # 23 at 10).  When RSLI granted Plaintiff's request, it also informed Plaintiff that "the time for its final decision will remain tolled until such time as the investigation is completed and RSL[I] has issued a final decision."  (*Id.*).[2]  Although Plaintiff objected to RSLI's tolling of the time period, RSLI nonetheless provided Plaintiff with a copy of Dr. Josephberg's report to review, while maintaining its position that the time period within which it had to render a decision was tolled. (*Id.*).

---

[2]       The Court does not necessarily accept RSLI's legal conclusion that RSLI had authority to toll the time period until a final decision was made, but it need not decide this issue in order to determine what standard of review applies.

By letter dated January 24, 2012, Plaintiff sent RSLI a copy of the Social Security Administration's ("SSA") "Notice of Decision — Fully Favorable," dated January 20, 2012. (Compl. ¶ 27). The notice approved Plaintiff's claim for social security benefits, based upon a finding that no jobs existed "in significant numbers in the national economy" that Plaintiff could perform. (*Id.*). On February 6, 2012, RSLI notified Plaintiff that it would take the full 90 days allowed under ERISA to decide the appeal, exclusive of any periods of time that it believed were tolled while waiting for or considering information from Plaintiff. (Dkt. # 23 at 10). Three days later, on February 9, 2012, RSLI requested a copy of the SSA's medical evaluation, which Plaintiff submitted to RSLI the same day. (Compl. ¶ 29).

Dr. Josephberg conducted the IME on February 7, 2012, and RSLI provided Plaintiff with a copy of Dr. Josephberg's report on February 24, 2012, for review and comment. (Compl. ¶¶ 28, 30). At that time, RSLI requested that Plaintiff provide any response to the IME report, including the submission of any new records, within 30 days. (Dkt. # 23 at 10). Shortly before the 30-day deadline, Plaintiff's counsel requested an extension through April 13, 2012, to submit a response, to which RSLI agreed. (*Id.*). Plaintiff failed to submit a complete response by the extended deadline. Instead, he submitted his response in three tranches, by letters dated April 12, 20, and 24, 2012, of which only the first letter was timely. (Compl. ¶ 31). Upon receipt of Plaintiff's entire response, RSLI provided the information to

Dr. Josephberg, who issued a supplemental IME report dated May 9, 2012, that RSLI received sometime between May 9 and 25, 2012. (Dkt. # 23 at 11).[3]

Also around May 25, 2012, Plaintiff's counsel contacted RSLI, and was informed that the supplemental IME report was expected to be issued imminently. (Compl. ¶ 35). According to Plaintiff's Complaint, in the month that followed, Plaintiff's counsel left voicemails with an RSLI appeals manager on or about June 8, 14, and 15, 2012; attempted without success to contact RSLI on June 20 and 21, 2012; and submitted a letter to RSLI around June 28, 2012, outlining the chronology of counsel's communications with RSLI and contending that Plaintiff had exhausted his administrative remedies under ERISA. (Compl. ¶¶ 36-39).

Assuming that the time period was tolled between February 24, 2012 (when RSLI provided Plaintiff with Dr. Josephberg's report), and April 25, 2012 (when Plaintiff submitted his final response to the report),[4] RSLI's decision was due by May 19, 2012. (Dkt. # 26 at 3). RSLI issued its decision denying Plaintiff's appeal on August 6, 2012, 79 days after the decision was due, and 13 days after Plaintiff filed his Complaint. (Dkt. # 1; *see also* Dkt. # 26 at 3). The decision is included in the Administrative Record for Plaintiff's case. (Dkt. # 23 at 8).

## E.   The Instant Litigation

On July 24, 2012, Plaintiff commenced this lawsuit against Defendants, claiming that RSLI had improperly terminated his disability benefits and found him

---

[3]    The parties dispute the date on which RSLI received the supplemental IME report. Plaintiff contends that the report was received on or about May 9, 2012 (Dkt. # 26 at 3), while Defendants maintain that they did not receive the report until after May 25, 2012 (Dkt. # 23 at 11).

[4]    Plaintiff acknowledges that this may be the case. (*See* Dkt. # 26 at 3).

ineligible for Any Occupation Benefits.  Plaintiff seeks damages for all unpaid disability benefits under the Policy from the time RSLI terminated his benefits on June 25, 2011, until the date a judgment is issued in this case.  (Dkt. # 1).

Discovery was completed on April 12, 2013, and the parties anticipate filing dispositive motions.  In contemplation of such motions and in resolving the Parties' discovery disputes, the Court raised the issue of the appropriate standard of review to apply to RSLI's denial of Plaintiff's benefits.  (Dkt. # 18).  In this regard, on January 8, 2013, the Court ordered the parties to submit a joint letter as to whether a *de novo* or an arbitrary and capricious standard would apply.  (*Id*.).  The parties submitted the joint letter on March 1, 2013.  (Dkt. # 23).  Subsequently, on March 15, 2013, the Court ordered each party to submit a supplemental letter brief addressing the proper standard of review.  (Dkt. # 25).  The parties complied, and the letters were fully submitted on May 2, 2013.  (Dkt. # 27).

Significantly, both parties agree that, under the terms of the Shawmut Plan, claims decisions made by RSLI would ordinarily be subject to review under an arbitrary and capricious standard, in light of the Supreme Court's decision in *Firestone Tire and Rubber Co.* v. *Bruch*, 489 U.S. 101 (1989), because the Shawmut Plan vests discretion in RSLI.  (*See* Dkt. # 26 at 1; Dkt. # 27 at 1).  From this common ground, the parties' positions diverge markedly.  Plaintiff contends that any deference to which RSLI's decision would otherwise be entitled was forfeited "because [RSLI] did not exercise its discretion in the time or manner required by ERISA" (Dkt. # 26 at 1), and further argues that the "substantial compliance" doctrine used by other courts as a means of preserving deferential review is legally

and factually inapposite (*id*. at 2-5).  In so doing, Plaintiff relies heavily on *Nichols* v. *Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005), in which the Second Circuit announced an exception to *Firestone*'s deferential review standard for cases in which the plan administrator has discretion, but fails to exercise it.  Distilled to its essence, Plaintiff's position is that because RSLI did not render a decision within the mandated timeframe, *Nichols* requires that *de novo* review be applied, and no exceptions to that requirement are warranted.  (Dkt. # 23, 26).

Defendants, by contrast, argue that the Supreme Court has recognized no exceptions to the deferential review standard established in *Firestone*, and that because the Shawmut Plan grants RSLI discretionary authority, RSLI's termination of Plaintiff's benefits must be reviewed under an arbitrary and capricious standard.  Defendants support these arguments with decisions from other courts that have applied a deferential review standard, even for untimely decisions.  (Dkt. # 27).  Defendants alternatively argue that this Court should adopt the substantial compliance doctrine, under which the Court would apply a deferential standard were it to find that RSLI substantially complied with the ERISA regulations regarding the timing of Plaintiff's appeal.  *See generally LaAsmar* v. *Phelps Dodge Corp. Life*, 605 F.3d 789, 799 (10th Cir. 2010) ("If [the] court concluded that the administrator's decision was in substantial compliance with ERISA deadlines, then, if otherwise warranted, we would still afford deference to the benefits decision.").

## DISCUSSION

### A.   Review of Eligibility Determinations Under ERISA

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations."  *Fay* v. *Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002).  The Supreme Court has made clear, however, that courts are to review challenges to a denial of benefits pursuant to ERISA under a *de novo* standard, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115; *see also Metro. Life Ins. Co.* v. *Glenn*, 554 U.S. 105, 112 (2008) ("Where the plan … grant[s] the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate." (internal citations omitted)).  Thus, where the administrator or fiduciary is granted discretionary authority, an arbitrary and capricious standard applies.  *Firestone*, 489 U.S. at 111; *see also Duncan* v. *Cigna Life Ins. Co. of New York*, 507 Fed. Appx. 61, 62 (2d Cir. 2013) (summary order) ("Where a plan gives the administrator 'authority to determine eligibility for benefits or to construe the terms of the plan,' we review the administrator's interpretation of benefits for abuse of discretion." (quoting *Firestone*, 489 U.S. at 115)).

The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since "the party claiming deferential review should prove the predicate that justifies it."  *Sharkey* v. *Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995).

**B.      Analysis**

The continuing vitality of the Second Circuit's decision in *Nichols* is far from clear.  *Nichols* was decided under an earlier set of ERISA regulations, and the Second Circuit has repeatedly declined to decide whether and to what extent its teachings in *Nichols* apply to the current regulations, which were amended in 2000 and made effective as of 2002.  Perhaps more importantly, *Nichols* is at odds with the Supreme Court's post-*Firestone* precedent.  Given this confluence of post-*Nichols* developments, the Court finds that an arbitrary and capricious standard applies.

Even were *Nichols* found to have precedential force, it would not compel a finding of *de novo* review in this case.  The Court in *Nichols* was concerned, and understandably so, with a plan administrator's refusal to issue a decision on a claimant's appeal, which refusal operated to deny the claimant access to the courts.  Here, the potential for denial of access to the courts has been addressed by amendments to ERISA's regulations, and the record in its totality demonstrates that RSLI fairly attempted to resolve Plaintiff's claims, maintained a dialogue with Plaintiff, and issued a decision shortly after this litigation was filed and well before the Court needed to consider the standard of review.  In analogous circumstances, courts have found that such efforts merit deferential review of the plan administrator's decision.

**1.  *Nichols'* Exception to the *Firestone* Rule**

ERISA requires that an appeal determination be made within 45 days from the time an appeal is filed; if the claim administrator determines that additional

time is required, one extension of 45 days may be permitted when written notice of the extension is provided to the claimant prior to the termination of the initial 45-day period that indicates the special circumstances requiring the extension and the date on which a decision is expected.  29 C.F.R. § 2560.503-1(i)(3) (2013) (read in conjunction with § 2560.503-1(i)(1)).  Any extension, however, may not exceed a period of 45 days from the end of the initial period, *i.e.*, 90 days from the time the appeal is filed.  *Id.*  Because the appeal decision was issued on August 6, 2012, it was untimely under the regulations, a fact Defendants do not dispute.

Plaintiff relies primarily on the Second Circuit's decision in *Nichols* to argue that *de novo* review applies.  (Dkt. # 23, 26).  In *Nichols*, the Court assessed what standard of review should apply to a denial of benefits for a plan that granted the administrator discretionary authority under the pre-2002 version of ERISA.  Under that version, if an appeal decision did not issue within the regulatory prescribed time period, the claim was "deemed denied on review."  29 C.F.R. § 2560.503-1(h)(4) (1999).

The plan administrator in *Nichols* failed even to acknowledge the claimant's appeal until after the time period specified by the regulations had expired.  When the administrator did provide notice of the appeal, it informed the claimant that it would not resolve the appeal until the claimant submitted certain medical records. The claimant refused to comply with the request and filed suit in federal court.  The administrator, as a result, never issued an appeal decision.  *Nichols*, 406 F.3d at 101-02.

Building on the Supreme Court's decision in *Firestone*, the *Nichols* Court held that it "may give deferential review only to actual exercises of discretion, and that a 'deemed denied' claim is not denied by an exercise of discretion[,] but by operation of law" on the day after the regulations require a decision be issued. *Nichols*, 406 F.3d at 101-02. From this, the Court concluded that "the lack of discretion vested in the plan administrator, or alternatively, failure to exercise any such discretion, requires *de novo* review of the denial of benefits." *Id.* at 101. Without any decision to which to defer, the Court held that *de novo* review would apply.

### 2.  The Impact of Post-*Nichols* Developments in ERISA

Preliminarily, it is unclear that *Nichols* controls (or, indeed, influences) the instant decision. A review of the *Nichols* decision makes clear that the Court's principal concern was the possibility that a plan administrator could refuse to decide a claimant's appeal and, by that inaction, prevent the claimant from obtaining judicial review of the matter. *See* 406 F.3d at 106 (noting that prior decisions "strongly suggest that a plan administrator's failure to adhere literally to the regulatory deadlines renders the claimant's administrative remedies exhausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay"); *id.* at 107 (distinguishing several "substantial compliance" cases on the basis that they "assume the plaintiff's access to the courts and support, rather than undermine, our holding today"); *id.* ("[A]dopting the proposition that substantial compliance can delay accrual of the right to sue would permit plan administrators to indefinitely tie up claimants, who are often in immediate need of benefits, with ongoing requests for information.

Such a result would render the plain language of Section 2560.503-1(h)(1) a

nullity."). These concerns stemmed from the Court's analysis of the pre-2002

version of the ERISA regulations, pursuant to which a plan administrator's failure

to issue a decision on a claim for benefits within the specified time frame rendered

the claim "deemed denied," *id.* at 105 (citing the then-applicable 29 C.F.R.

§ 2560.503-l(h)(4)), but said nothing about the claimant's consequent right to

judicial access. *Compare* 29 C.F.R. § 2560.503-1(h)(4) (1999) ("If the decision on

review is not furnished within such time, the claim shall be deemed denied on

review."), *with* 29 C.F.R. § 2560.503-1(l) (2013) ("In the case of the failure of a plan

to establish or follow claims procedures consistent with the requirements of this

section, a claimant shall be deemed to have exhausted the administrative remedies

available under the plan and shall be entitled to [bring a civil action].").

As amended, ERISA now provides that where a plan administrator fails to

"follow claims procedures consistent with the [regulatory] requirements, a claimant

shall be deemed to have exhausted the administrative remedies available under the

plan and shall be entitled to pursue" other remedies available under ERISA. 29

C.F.R. § 2560.503-1(l) (2013). The amended regulations take no position on whether

a claim is approved or denied upon the expiration of the regulatory time period and,

therefore, do not terminate an administrator's authority to exercise its discretion.

Rather, by use of the "deemed ... exhausted" language, the current regulations

merely allow the claimant to proceed to court if the administrator does not exercise

its discretion within the regulatory timeframe. As a result, the concern about the

denial of court access that animated the *Nichols* Court has been obviated by regulation.[5]

In *Krauss* v. *Oxford Health Plans, Inc.*, the Second Circuit made clear that it has not decided whether it will apply *de novo* review, and consequently *Nichols*, to the amended version of ERISA.  517 F.3d 614, 624 (2d Cir. 2008) ("Although amended regulations have replaced the 'deemed denied' provision with one that, upon a defendant's failure to follow regulatory time frames, deems a plaintiff's administrative remedies exhausted, and neither we nor any other circuit has, to our knowledge, addressed whether *de novo* review similarly applies under the revised regulations, we join our sister circuits in delaying resolution of the question for another day." (internal citation omitted)).  In a more recent summary order in *Duncan* v. *Cigna Life Ins. Co. of New York*, the Court reaffirmed its decision to leave open the issue of whether *de novo* review would apply under the current ERISA

---

[5]    The statement by the Department of Labor ("DOL") accompanying the amendments indicated that DOL intended them to ensure that "claimants denied access to the statutory administrative review process should be entitled to take that claim to a court under section 502(a) of the Act for a full and fair hearing on the merits of the claim."  ERISA Claims Procedures, 65 Fed. Reg. 70246, 70256 (Nov. 21, 2000).  DOL did not specify a standard of review, but observed that "[t]he Department's intentions in including this provision in the proposal were to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference."  *Id.*  DOL did not indicate whether any variance from the regulations warranted *de novo* judicial review.  In any event, several courts reviewing DOL's statement have concluded that it merits no deference.  *See Kohut* v. *Hartford Life and Acc. Ins. Co.*, 710 F. Supp. 2d 1139, 1144-45 (D. Colo. 2008) (finding DOL's commentary to be entitled to no judicial deference because the language of the amendments was not ambiguous; also observing that "[t]he regulation does not purport to state a standard of review under which such an action will be governed"); *Goldman* v. *Hartford Life and Accident Ins. Co.*, 417 F. Supp. 2d 788, 803-05 (E.D. La. 2006) (concluding that commentary was not entitled to deference under either *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council*, 467 U.S. 837 (1984), or *Auer* v. *Robbins*, 519 U.S. 452 (1997)).

regulations, holding instead that a denial of benefits would be properly upheld under either *de novo* or an abuse of discretion review.  507 Fed. Appx. at 63.[6]

In addition, in recent years, district courts have recognized limits to the *Nichols* holding occasioned by the amendments to ERISA.  *See, e.g.*, *Am. Society for Technion-Israel Inst. of Tech., Inc.* v. *First Reliance Standard Life Ins. Co.*, No. 07 Civ. 3913 (LBS), 2009 WL 2883598, at *3 (S.D.N.Y. Sept. 8, 2009) ("[T]he *Nichols* case relied upon by Plaintiff considered a prior version of the regulations under

---

[6]   Despite a superficial similarity to the issues before the Court, the Second Circuit decisions in *Eastman Kodak Co.* v. *STWB, Inc.*, 452 F.3d 215 (2d Cir. 2006), and *Burke* v. *Pricewaterhousecoopers LLP Long Term Disability Plan*, 572 F.3d 76 (2d Cir. 2009), are, in fact, wholly inapposite.  In *Kodak*, the Court determined whether, under ERISA, an employee benefit plan participant was required to exhaust an administrative claims procedure that the plan had adopted only after the employee brought an action to recover benefits.  452 F.3d at 216.  To answer this issue, the Court focused solely on whether ERISA's "deemed exhausted" provision, 29 U.S.C. § 2560-503-1(l), could be "circumvented by a plan's belated creation of an ERISA-complaint claims procedure."  *Id.* at 222.  The Court concluded that it could not, and that the employee need not exhaust such a *post hoc* claims procedure.

The question before the Court in *Burke* was whether plaintiff's ERISA claim was timely — the answer to which hinged on whether the claim had accrued when plaintiff's benefits were initially denied or when plaintiff had exhausted her administrative remedies.  572 F.3d at 78-79.  In reciting the district court's opinion, the Court noted its prior holding in *Nichols* simply because the district court had relied on *Nichols* to support its conclusion that the Second Circuit's "strict adherence" to DOL regulations militated in favor of an accrual date at the time benefits are initially denied.  *Id.* at 80.  The *Burke* Court neither indicated what standard of review would apply in that case (precisely because the issue was not before the Court) nor decided whether the *Nichols* articulation of the applicable standard of review continued to apply under the amended version of ERISA.  Indeed, the Court overlooked its own pronouncement in *Krauss* that it had not decided whether to apply *de novo* review to claims arising under the amended version of ERISA that are no longer deemed "denied."  *Krauss*, 517 F.3d at 624.

Thus, neither *Kodak* nor *Burke* answered the issue of what standard of review should apply under the amended version of ERISA where, as here, the administrator exercises its discretion in an untimely fashion.  Like *Nichols*, and unlike the instant case, both opinions concerned balancing a plaintiff's access to the court with ERISA's regulatory regime.  *See Kodak*, 452 F.3d at 223 ("Like the *Nichols* court, we reject the idea that the small measure of conformity to the regulatory requirements shown in this case can block or delay a plaintiffs' right to sue."); *Burke*, 572 F.3d at 81 ("We hold the district court was correct to enforce the policy-prescribed limitations period in its entirely, including its prescribed start date, and to dismiss [plaintiff's] claim as time-barred because it was brought after the expiration of the limitations period.").

which failure to comply with regulatory deadlines meant that the benefits were 'deemed denied.'").  Courts have also limited *Nichols'* application to those cases in which an administrator fails entirely to issue a decision.  *See, e.g.*, *Robinson* v. *Metro. Life Ins. Co.*, No. 06 Civ. 7604 (LLS), 2007 WL 3254397, at *2 (S.D.N.Y. Nov. 2, 2007) ("[T]he holding of *Nichols* is limited to those cases where the administrator fails to respond at all, not those cases where the response is tardy.  Where the response is merely procedurally tardy, the denial is still owed deference."); *Morgenthaler* v. *First Unum Life Ins. Co.*, No. 03 Civ. 5941 (AKH), 2006 WL 2463656, at *3 (S.D.N.Y. Aug. 22, 2006) (same).

### 3.  The Impact of Post-*Firestone* Supreme Court Decisions

Separate and apart from the amendments to ERISA, the force of *Nichols* has been undercut by post-*Firestone* precedent.  As Defendants note, the Supreme Court has not recognized any exception to the general rule established in *Firestone* that courts must apply an arbitrary and capricious standard where, as here, the plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits.  (Dkt. # 27 at 1).  These more recent cases include *Metropolitan Life Ins. Co.* v. *Glenn*, in which the Court declined to require *de novo* review even where a conflict existed, as where the plan administrator both evaluates claims and pays benefits.  554 U.S. at 115.  Even as to those facts, the Court "[did] not believe that *Firestone*'s statement implies a change in the *standard* of review, say, from deferential to *de novo* review."  *Id.* (emphasis in original).

In its most recent teaching on the issue, the Supreme Court observed that "*Firestone* ... set out a broad standard of deference without any suggestion that the

standard was susceptible to *ad hoc* exceptions." *Conkright* v. *Frommert*, 559 U.S. 506, 513 (2010).  In *Conkright*, the Supreme Court reversed a Second Circuit decision that, like *Nichols*, had "crafted an exception" to the *Firestone* deference rule, in this case concluding that deferential review did not apply where an administrator had previously construed the same plan terms and the Second Circuit had found that construction to have violated ERISA.  559 U.S. at 513-14 (noting that under the Second Circuit's view, "the District Court here was entitled to reject a reasonable interpretation of the Plan offered by the Plan Administrator, solely because the Court of Appeals had overturned a previous interpretation by the Administrator," and referring to this approach as "one-strike-and-you're-out").

The Court further elucidated why an arbitrary and capricious standard must apply where an administrator has discretionary authority:

> Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation.  It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from *de novo* judicial review.  Moreover, *Firestone* deference serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan ... that covers employees in different jurisdictions — a result that would introduce considerable inefficiencies in benefit program operation, which might lead those employers with exiting plans to reduce benefits, and those without such plans to refrain from adopting them.

*Id.* at 1649;[7] *see also Bell* v. *Pfizer, Inc.*, 626 F.3d 66, 79 (2d Cir. 2010) (noting that the Supreme Court in *Conkright* "reiterated its longstanding concern with ERISA

---

[7]     A review of Circuit Court decisions addressing the relevant standard of review post-*Nichols* bears out these concerns.  The First Circuit, for instance, has decided to "eschew automatic rules and to evaluate each case on its own."  *Bard* v. *Boston Shipping Ass'n*, 471 F.3d 229,

litigation expenses," including the "increased litigation costs associated with *de novo* review of a plan administrator's decisions as to plan benefits").

In sum, in light of (i) the amendments to ERISA that addressed the *Nichols* Court's concern with ensuring claimant access to courts and (ii) the Supreme Court's pointed directive in *Conkright* against *ad hoc* exceptions to *Firestone*, the Court declines to extend *Nichols* to the facts of this case.  Put somewhat differently, in the absence of Second Circuit precedent holding that *de novo* review applies under the current ERISA regulations where a plan administrator vested with discretionary authority renders an untimely decision, this Court looks to Supreme Court precedent for guidance.  *See Hutto* v. *Davis*, 454 U.S. 370, 375 (1982) ("[A] precedent of this Court must be followed by the lower federal courts.").  That precedent requires deferential review.

---

236 (1st Cir. 2006); *see also id.* ("Ultimately, we do not decide whether the Plan's failure to render a timely decision by itself entitles Bard to *de novo* review, whether the Plan's eventual benefits denial after suit was filed was in 'substantial compliance' with ERISA's time limits and other regulations, or whether inquiry into 'substantial compliance' is even relevant in ERISA cases of this nature — whether brought under the new regulations or otherwise.  Those are complicated questions on which the circuits have divided.").  The Ninth Circuit, in contrast to both the First Circuit and *Nichols*, allows deferential review even where there is a measure of procedural irregularity.  *Abatie* v. *Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006) ("When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review *de novo* the administrator's decision to deny benefits. We do so because, under *Firestone*, a plan administrator's decision is entitled to deference only when the administrator exercises discretion that the plan grants as a matter of contract."), *abrogated on other grounds by Metro. Life Ins. Co.* v. *Glenn*, 554 U.S. 105.  As but a third example, the Tenth Circuit has found that deference is not required where a plan administrator's delay in resolving a claim for benefits renders that claim "deemed denied," but has also, at times, recognized an exception to this rule for cases in which the plan administrator has substantially complied with the regulations in the context of an ongoing, good-faith dialogue with the claimant.  *See generally Rasenack ex rel. Tribolet* v. *AIG Life Ins. Co.*, 585 F.3d 1311, 1316-17 (10th Cir. 2009).

4. ***Nichols* Does Not Govern This Action Because It Is Factually and Logically Inapposite**

Even assuming that *de novo* review continued to apply under the current ERISA regulations to certain decisions based on an administrator's discretionary authority, *Nichols* does not support applying *de novo* review to Plaintiff's claim.  As discussed in the preceding section, the *Nichols* Court focused on the possibility that dilatory conduct could preclude judicial access — a possibility not implicated by Defendants' conduct in this case.  A review of the underlying conduct, moreover, makes clear that the instant case is not *Nichols*.  The plaintiff in *Nichols*, it bears emphasizing, filed the lawsuit in question after 197 days had passed without receiving a formal decision from the plan administrator concerning the resolution of her appeal.  Indeed, the plan administrator had failed even to acknowledge the claimant's appeal until after the regulatory time period expired, and had refused to issue a decision even during the pendency of the district court proceedings.  *Nichols*, 406 F.3d at 102.  On this record of inaction, it was understandable for the Second Circuit to conclude that *Firestone* required not merely the vesting, but also the exercise, of discretionary authority.  *Nichols*, 406 F.3d at 109 ("Alternatively, even if Prudential was vested with discretion, it made no valid exercise of that discretion here.");[8] *see also Strom* v. *Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 244 (2d Cir. 2007) ("We instructed the district court [in *Nichols*] to review the plan administrator's decision *de novo* because Prudential's inaction 'le[ft] the court without any decision or application of expertise to which to defer.'  In the

---

[8]     As it happened, the Court also found that the plan in *Nichols* vested no discretion in the plan administrator.  406 F.3d at 109.

instant case, the Plan administrators explicitly refused to decide Strom's claim, and such a non-decision cannot be deemed an 'exercise of discretion' to which the district court might have deferred." (internal citations omitted)).

Here, by contrast, RSLI contacted Plaintiff approximately three weeks after it received Plaintiff's appeal to request that Plaintiff submit to an IME. RSLI then exchanged substantial communications with Plaintiff as to the information necessary to reach its final decision, including conducting an IME, obtaining Plaintiff's SSA medical evaluation, and updating Plaintiff as to the status of its decision. Finally, and most importantly, RSLI exercised its discretion when it issued a final appeal decision, and that decision was issued just a few days after the instant litigation was brought. There were delays in the proceeding, to be sure, and the Court is troubled by RSLI's apparent reticence in the month preceding the commencement of this action. That being said, it also appears that some of the delay was attributable to Plaintiff's efforts at negotiating conditions precedent to appearing for an IME, and to RSLI's efforts at complying with Plaintiff's request for an opportunity to respond to Dr. Josephberg's report.

Plaintiff suggests that *Nichols* should be read to foreclose deference to a plan administrator's exercise of discretion where that discretion was "not exercise[d] in the time or manner required by ERISA." (Dkt. # 26 at 1). *Nichols* itself did not go that far, and with good reason: It would turn *Firestone* on its head to conclude that any transgression — however minor or technical, and for whatever reason (including claimant-generated) — from ERISA's requirements resulted in wholesale forfeiture of a plan administrator's discretion. Such stringency would also,

necessarily, engender significant (and, to some degree, needless) consumption of judicial resources in the course of the *de novo* review.

Precisely for this reason, courts have continued to apply discretionary review where the departures from ERISA's requirements (including temporal ones) are minor and/or occur in the larger context of an ongoing, good-faith dialogue between the claimant and the plan administrator aimed at resolving the claimant's appeal. Broadly speaking, there are two doctrinal vehicles by which this is accomplished. Several courts, including courts in this District, have simply excused technical non-compliance and applied deferential review — even where the appeal decision was untimely, and even where the decision was issued after the claimant commenced litigation. *See, e.g.*, *Robinson*, 2007 WL 3254397, at *2 (applying arbitrary and capricious standard even though appeal decision issued approximately one month after the claimant filed suit, where plan administrator had remained in contact with claimant's attorney, informed the attorney of the reasons for the delay, and took steps to ensure a full and fair review of the claim); *Morgenthaler*, 2006 WL 2463656, at *3 (applying an arbitrary and capricious standard where appeal decision issued 113 days after appeal was filed and one week after claimant filed suit).

Other courts, again including courts in this District, have adopted a doctrine of "substantial compliance," where, "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines ... would not entitle the claimant to *de novo* review." *Gilbertson* v. *Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003);

accord *Jebian* v. *Hewlett-Packard Co. Employee Benefits Org, Income Protection Plan*, 349 F.3d 1098, 1107 (9th Cir. 2003); *Giraldo* v. *Bldg. Svc. 32B–J Pension Fund*, No. 04 Civ. 3595 (GBD), 2006 WL 380455, at *3 n.5 (S.D.N.Y. Feb. 16, 2006) ("The case law supports the proposition that substantial compliance with the regulations suffices."); *Pava* v. *Hartford Life & Accident Ins. Co.*, No. 03 Civ. 2609 (SLT) (RML), 2005 WL 2039192, at *9 (E.D.N.Y. Aug. 24, 2005) ("[T]he case law in this Circuit indicates that where the administrator communicates with the claimant regarding the status of her appeal, acts in good faith, and does not delay its decision unreasonably, its failure to comply with the regulation deadlines may be excused."); *see also Kohut* v. *Hartford Life and Accident Ins. Co.,* 710 F. Supp. 2d 1139, 1146-47 (D. Colo. 2008) (finding substantial compliance where claim was denied 74 days late and two days after claimant filed suit).

The Second Circuit has declined to decide the substantial compliance issue. *See Duncan*, 507 Fed. Appx. at 63 ("As we stated in *Nichols* v. *Prudential Insurance Co. of America*, our Court has not yet definitely adopted or rejected the substantial compliance doctrine.")  However, the *Nichols* Court itself recognized that "[t]here may be good equitable and policy reasons for a substantial compliance exception to our holding today that may even be sufficient to overcome our analysis of the requirements of *Firestone*."  *Nichols*, 406 F.3d at 110-11.[9]

---

[9]     The Court simply rejected the notion that "substantial compliance can block or delay a plaintiff's access to the federal courts":

> The proposition that substantial compliance can prevent overturning a decision is akin to harmless error analysis, establishing merely that a decision need not be carried out with absolute procedural perfection so long as the regulatory purpose is fulfilled.  On the other hand, adopting the

Whether characterized as "excusable non-compliance" or "substantial compliance" is, in the Court's estimation, largely a matter of semantics.  In both paradigms, courts review the record of the dealings between the claimant and the plan administrator to ensure that the parties acted in good faith, with consideration of the relevant regulatory deadlines and without dilatory intent — and, more pointedly, that the plan administrator did not attempt to "lead the claimant on," as it were, and thereby cause the claimant (i) to receive late (or not at all) benefits to which the claimant was entitled, or (ii) to lose opportunities for redress of an adverse decision.  In short, these reviews are designed to ensure that there is a fair exercise of the plan administrator's discretion for the court to review.  In the instant case, were some variant of *Nichols* to remain, the Court would still find that deferential review applies.  The dealings between Plaintiff and RSLI were frequent, sufficiently prompt, and informative, and resulted in a decision on the appeal that post-dated the instant litigation by just 13 days.  This record surely merits the Court's deference.[10]

---

> proposition that substantial compliance can delay accrual of the right to sue would permit plan administrators to indefinitely tie up claimants, who are often in immediate need of benefits, with ongoing requests for information. Such a result would render the plain language of Section 2560.503-1(h)(1) a nullity.

*Nichols*, 406 F.3d at 107.

[10]   The cases cited by Plaintiff in which courts applied *de novo* review are not to the contrary. (Dkt. # 26 at 2).  In those cases, the plan administrator either failed entirely to communicate with the claimant prior to the regulatory time period expiring or made a minimal attempt to comply with the regulatory requirements.  *See LaAsmar*, 605 F.3d at 799 (finding that the record was devoid of any "on-going productive evidence-gathering process in which the claimant [was] kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator"); *Rasenack*, 585 F.3d at 1317 (no contact between the claimant and the administrator between when the appeal was filed and when the regulatory time period expired); *Fershtadt* v. *Verizon Commc'n, Inc.*, No. 07 Civ. 6963

## CONCLUSION

For the foregoing reasons, RSLI's termination of Plaintiff's disability benefits will be reviewed under an arbitrary and capricious standard.

In addition, it is hereby ORDERED that the parties appear for a pretrial conference to discuss a briefing schedule for any summary judgment motion on October 22, 2013, at 3:00 p.m., to be held in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.

SO ORDERED.

Dated:      September 10, 2013
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

(CM), 2010 WL 571818, *11 (S.D.N.Y. Feb. 9, 2010) (plan administrator failed to acknowledge receipt of and to communicate with plaintiff regarding the appeal prior to the administrative deadline); *Thompson* v. *Union Sec. Ins. Co.*, 688 F. Supp. 2d 1257, 1264 (D. Kan. 2010) (delay in excess of seven months, during which time there was no communication between the plan administrator and the claimant); *St. Onge* v. *Unum Life Ins. Co. of Am.*, No. 3:07CV01249 (AWT), 2010 WL 3802787,*3 (D. Conn. Sept. 20, 2010) (plan administrator failed to expressly notify the plaintiff in writing that it was extending the decision period, and there was no evidence of good-faith, informative communications that might excuse the delay).